United States District Court
Southern District of Texas
**ENTERED**
July 28, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SIGMA DEVELOPMENT CORPORATION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 4:16-cv-2555 |
| TGP SECURITIES, BORIS EPSHTEYN, and JAMES TAMMARO, | § § § § | |
| *Defendants.* | § § | |

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

Pending before the Court is Defendants' motion to dismiss. Second Mot. Dismiss, ECF No. 16.[1] The Court held a hearing on the motion to dismiss on December 15, 2016.[2] The Court recommends that Defendants' motion to dismiss be granted in part and denied in part.

---

[1] On November 4, 2016, United States District Judge Nancy F. Atlas referred all matters in this case for ruling pursuant to 28 U.S.C. § 636(b)(1)(A) and all potentially dispositive matters for report and recommendation pursuant to § 636(b)(1)(B). Order of Referral, ECF No. 24.

[2] Sigma failed to give pre-suit notice, as required under the Deceptive Trade Practices Act (DTPA). Tex. Bus. Com. Code § 17.505(a). After the hearing, the Court entered an order abating the case for sixty days from the date Sigma gave sufficient pre-suit notice. Order, ECF No. 29. Sigma waited several months before serving the required notice on March 27, 2017, four days before the Court held a status conference. During the March 31, 2017, conference, the Parties agreed to engage in limited discovery to facilitate a mediation to see if the Parties could settle before spending money fully litigating the case. However, because Sigma failed to comply with Defendants' discovery requests, the Court cancelled the scheduled mediation, Order, ECF

1

## I.    BACKGROUND

This is a case about a failed business transaction involving Plaintiff Sigma Development Corporation ("Sigma") and Defendants TGP Securities ("TGP") and two of its employees, Boris Epshteyn ("Epshteyn") and James Tammaro ("Tammaro"). Sigma hired TGP to find and secure investors for Sigma's Houston theme park development project. Am. Compl, ¶ 20, ECF No. 11. The transaction broke down, and Sigma seeks to recover the $100,000 it paid to TGP as well as other damages.

In November 2014, Azhar Chaudhary ("Chaudhary"), as a representative for Sigma, contacted Epshteyn and Tammaro at TGP to hire TGP to find and secure investors for this development project. *Id.* ¶ 13. During the negotiations, Epshteyn told Chaudhary that the fee for TGP's services was $200,000, to be paid in four $50,000 monthly installments, and a 4% success fee. *Id.* ¶ 24.

Sigma alleges that during these negotiations, Epshteyn and Tammaro made a number of misrepresentations to Chaudhary to induce Sigma into start paying TGP the fee. *Id.* ¶¶ 14-24. Specifically, Epshteyn told Chaudhary that he had already called upon his connections, convinced wealthy individual investors on the merits of the project, and the necessary funding was all but arranged. *Id.* ¶¶ 21-22. Epshteyn and Tammaro also "represented that obtaining all necessary funding for

No. 39, and entered a scheduling order setting this case for a docket call on June 18, 2018, ECF No. 43.

the project was all but done, and it only needed [Sigma's] decision to pay the upfront fee and enter into a contractual relationship." *Id*. ¶ 22. Sigma made the first $50,000 payment on November 21, 2014, and another payment on December 19, 2014, to TGP "as payment for the services that Defendants promised to provide." *Id.* ¶ 27-28.

Sigma alleges that it paid the first two installments, but did not enter into a contract with TGP. *Id.* Epshteyn and Tammaro drafted and signed a proposed agreement, and sent it to Chaudhary to execute. *Id.* ¶ 28. Chaudhary did not sign the agreement because the representations about the funding being secured had not been included in the agreement. *Id.* Chaudhary told Epshteyn and Tammaro that no further payments would be made unless they revised the contract to include the previously agreed upon covenants and provided evidence that the project was partially funded. *Id.*

In December 2014, Chaudhary called Epshteyn to inquire about the status of modifying the contract and obtaining investors. Epshteyn responded that he was still working on securing investors; he had two groups of investors who were ready and willing to fund the project, including Madison Capital and Mission Capital. *Id.* ¶ 29. In late January or early February 2015, Chaudhary made further inquiries, but Epshteyn and Tammaro refused to discuss their progress until Sigma made additional payments. *Id.* ¶ 30-38.

3

In February 2015, Chaudhary contacted Madison Capital directly. He learned that Madison Capital had no interest in Sigma's project, and Epshteyn and Tammaro had not contacted Madison Capital about investing in Sigma. *Id.* ¶ 38. Afterwards, Chaudhary requested that TGP return the $100,000 to Sigma previously paid, but Epshteyn and Tammaro refused to return the money, claiming it had already been spent. *Id.* ¶ 39.

On June 27, 2016, Sigma filed suit alleging ten claims under Texas state law.[3] Defendants filed a motion to dismiss based on a lack of personal jurisdiction over the individual defendants and failure to state a claim. Second Mot. Dismiss, ECF No. 16.[4]

## II.     THE COURT HAS PERSONAL JURISDICTION OVER EPSHTEYN AND TAMMARO

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if it does not have personal jurisdiction over the defendant. The plaintiff bears the burden of establishing that the court has personal jurisdiction over a non-resident defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). If

---

[3] Sigma initially filed in state court, but Defendants removed it to federal court. Not. Removal, ECF No. 1. Judge Atlas denied Sigma's motion to remand. Mem. & Order, ECF No. 23.

[4] Defendants filed a motion to dismiss the original complaint, ECF No. 4, but Sigma subsequently filed an amended complaint, ECF No. 11. Judge Atlas denied the motion to dismiss as moot. Order, ECF No. 17. In their second motion to dismiss, Defendants moved to dismiss based on improper service, but abandoned this argument at the December 15 hearing.

the court does not conduct an evidentiary hearing, the plaintiff meets this burden by "making a prima facie case of personal jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 671 (S.D. Tex. 2014) (Harmon, J.) (citing *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). A prima facie showing does not require the plaintiff to establish jurisdiction by a preponderance of the evidence. *Id.* (citing *Johnston*, 523 F.3d at 609).

In making this prima facie showing, the court "'must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all [factual] conflicts . . . .'" *Monkton Ins. Servs.*, 768 F.3d at 431 (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). If the defendant disputes the factual bases for personal jurisdiction, the court may consider the record, including "affidavits, interrogatories, depositions, oral testimony," or other methods of discovery. *Id.* (quoting *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)). Sigma alleges, *inter alia*, that Epshteyn and Tammaro committed a tort in Texas, and that the claims asserted arose from those actions. Am. Compl., ¶¶ 8(b), 11, ECF No. 11.

"Specific jurisdiction is established when a defendant's contacts arise from, or are directly related to the cause of action." *Fairchild v. Barot*, 946 F. Supp. 2d 573, 578 (N.D. Tex. 2013) (internal citations omitted). A single communication

directed at the forum "can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Id.*

## B.   The Fiduciary-Shield Doctrine Does Not Apply

The sole basis on which Epshteyn and Tammaro challenge personal jurisdiction is that Sigma does not allege facts showing that they acted in their personal capacity rather than for their employer. Second Mot. Dismiss, ¶¶ 35-39, ECF No. 16.[5]

The fiduciary-shield doctrine protects individual employees and officers from personal liability when they act on behalf of a corporate entity. *Evergreen Media Holdings*, 68 F. Supp. 3d at 676 ("an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has *in personam* jurisdiction over the corporation"); *Stull v. LaPlant*, 411 S.W.3d 129, 135-36 (Tex. App.—Dallas 2013, no pet.) (finding no personal jurisdiction because the individual defendant's only contact with the forum state was "done solely as an executive of [the principal] and not in their personal capacity").

The fiduciary-shield doctrine, however, does not apply to protect an individual who personally commits a tort in the forum state. *Farouk Sys., Inc. v.*

---

[5] Defendants have not otherwise challenged whether the Court can exercise personal jurisdiction over them based on their minimum contacts with Texas. *See Evergreen Media Holdings*, 68 F. Supp. 3d at 674.

*AG Glob. Prod., LLC*, No. H-15-CV-465, 2015 WL 12778401, at *4 (S.D. Tex. June 22, 2015) (Atlas, J.) (being the president and CEO of a company does not relieve the defendant "individually of responsibility for his own conduct in connection with the" allegations); *Evergreen Media Holdings*, 68 F. Supp. 3d at 678 (same).

Sigma alleges that Epshteyn and Tammaro personally committed fraudulent acts in Texas, including negligent misrepresentation and fraud. Therefore, the fiduciary-shield doctrine does not apply here. *See Fairchild*, 946 F. Supp. 2d at 581 ("the fiduciary shield does not prohibit the Court from exercising personal jurisdiction over Barot," based on fraud and unjust enrichment claims); *Yujie Ren v. ANU Res., LLC,* 502 S.W.3d 840, 849 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (rejecting fiduciary-shield doctrine because the plaintiff alleged that the defendant personally committed fraud and tortious interference with a contract).

Because the fiduciary-shield doctrine does not apply, the Court has personal jurisdiction over Epshteyn and Tammaro and their motion to dismiss on personal jurisdiction grounds should be denied.

## III.   DEFENDANTS' MOTION TO DISMISS BASED ON A FAILURE TO STATE A CLAIM SHOULD BE GRANTED IN PART

### A.   Standard of Review

"To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for

7

entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the pleaded factual contents allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). A complaint is insufficient if it offers only "labels and conclusions, [and] a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks and citations omitted).

The ultimate question "is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 590 (S.D. Tex. 2012) (Ellison, J.). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Id.* (citing *Iqbal*, 556 U.S. at 678). The court should not evaluate the claims based on their merits, even if "'it seems almost a certainty to the court that the facts alleged cannot be proved to support the legal

claim.'" *U.S. ex rel. Long v. GSD & M Idea City LLC*, No. 3:11-CV-1154, 2013 WL 214590, at *7 (N.D. Tex. Jan. 18, 2013) (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)). Nor should the court "'strain to find inferences favorable to the plaintiff[].'" *Neiman v. Bulmahn*, 854 F.3d 741, 752 (5th Cir. 2017) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004)). "[C]ourts are [also] required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." *Farshchi v. Wells Fargo Bank, N.A.*, 2016 WL 2858903, at *2 (S.D. Tex. May 13, 2016) (Lake, J.).

**B.     Defendants Have Submitted Documents Outside the Complaint to Support Their Motion to Dismiss**

"[A] court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion." *Goodman v. Hewlett-Packard Co.*, No. 4:16-CV-3195, 2017 WL 2859805, at *3 (S.D. Tex. June 13, 2017) (Palermo, J.), R&R *adopted*, 2017 WL 2844032 (S.D. Tex. June 30, 2017) (Ellison, J.) (citing *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 434 (S.D. Tex. 2016) (Hanks, J.)). Accordingly, when a defendant attaches documents to a motion to dismiss, the court may consider these documents as part of the pleadings only if they are "(1) referenced by the complaint and (2) central to the claim." *Id.* (citing *Lone Star Fund V (U.S.), LP v. Barclays Bank*, 594 F.3d 383, 387 (5th Cir. 2010)).

"A document is central to a claim when it is 'necessary to establish an element' of the claim." *Id.* (citing *Pylant v. Cuba*, No. 3:14-CV-0745, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Kaye v. Lone Star Fund V (U.S.), LP*, 453 B.R. 645, 662 (N.D. Tex. 2011))); *accord Peacock*, 181 F. Supp. 3d at 434; *see Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). As the Fifth Circuit explained, courts may consider documents attached to the motion to dismiss because, the defendant merely assists the plaintiff in establishing the *basis of the suit*, and the court in making the *elementary determination* of whether a claim has been stated." *Collins*, 224 F.3d at 498-99 (emphasis added); *accord Sinkfield v. Univ. of Tex. Med. Branch*, No. 4:16-CV-3395, 2017 WL 367568, at *3 (S.D. Tex. Jan. 25, 2017) (Atlas, J.).

Defendants attach four documents to its motion to dismiss: (1) a contract between Defendants and a third party, Sitywalk, dated November 14, 2014; (2) a draft agreement between Sigma and TGP, dated December 19, 2014; (3) emails dated November 10-13, 2014, between Chaudhary and Epshteyn; and (4) emails dated December 19, 2014, between Chaudhary and Epshteyn. Second Mot. Dismiss, App., ECF No. 16-1. Sigma attaches to its response some of the emails from December 19, 2014, and emails from January 2015. Resp. Second Mot. Dismiss, Exs. A-F, ECF No. 20-1.

The Court does not consider the November 2014 and January 2015 email exchanges because they are not referenced in the complaint. *See Berkley Assurance Co. v. RV Hosp. LLC*, No. 5:14-CV-194, 2015 WL 11120860, at *2 (N.D. Tex. Sept. 25, 2015) (disregarding documents not referenced to in the complaint).

In its amended complaint, Sigma references the contract between Sitywalk and TGP; the draft agreement between Sigma and TGP; and the December 19, 2014, email exchange between Chaudhary and Epshteyn. Am. Compl., ¶¶ 28-29, 46(3)-(5), ECF No. 11. Only the December email chain is central to Sigma's allegations. *See Robles v. Aransas Cty. Sheriff's Dep't*, No. 2:15-CV-495, 2016 WL 4159752, at *4 (S.D. Tex. Aug. 5, 2016) (Ramos, J.). This document helps Sigma establish that the November payment would be credited to Sigma. In addition, it shows that TGP made representations to Sigma in December 2014, not some other entity. The Court does not consider the contract between Sitywalk and TGP and the draft agreement between Sigma and TGP because they are not central to the Sigma's allegations. *See id.* (disregarding exhibit not central to allegations).[6]

---

[6] The only mention of Sitywalk or the Sitywalk contract with TGP is in ¶¶ 46(3) and 46(4). Am. Compl., ECF No. 11. The complaint does not describe who Sitywalk is, what its relationship is to Sigma, or anything related to the contract except that that it was "mutually voided by the parties." *Id.* ¶ 46(4), ECF No. 11. Sitywalk is a third party and its contract with TGP is not central Sigma's claims based upon fraud as alleged in the complaint. Likewise, Sigma does not assert a claim for breach of contract. It alleges that Defendants sent a contract to it for signature, but negotiations continued and it was never signed. *Id.* ¶¶ 46(3)-(5). The draft contract is not central to Sigma's claim based upon fraud.

**C.     Merits of Each Claim**

**1.      Sigma has sufficiently pled its negligent misrepresentation claim**

To state a claim for negligent misrepresentation, a plaintiff must allege four elements: (1) a defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.—Dallas 2013, no pet.) (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999)); *Guajardo v. Freddie Records, Inc.*, No. H-10-cv-2024, 2013 WL 12144184, at *7 (S.D. Tex. Mar. 19, 2013) (Stacy, J.), *R&R adopted*, 2013 WL 12144072, at *1 (S.D. Tex. Apr. 23, 2013) (Miller, J.).

Defendants argue that this claim should be dismissed because Sigma does not allege that the misrepresentation was of an existing fact and the misrepresentation was made to another entity, not Sigma. Second Mot. Dismiss, ¶¶ 53-62, ECF No. 16. Neither of these arguments have merit.

> a.   *Sigma alleges statements of existing fact*

Defendants argue that the alleged misrepresentations that they made to Sigma were future promises to raise capital and not actionable in a claim for negligent misrepresentation. *Id.* ¶¶ 58-59.

In a negligent misrepresentation claim, the "false information" the defendant supplies to guide others must be a misstatement of an existing fact, not a promise of future conduct or representation as to a conditional future event. *E.g., James v. Well Fargo Bank, N.A.*, 533 F. App'x 444, 448 (5th Cir. 2013) (unpublished) (claim failed because promises that the plaintiff would be eligible for a loan and foreclosure would be postponed are inactionable promises of conditional events and future conduct); *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 358 (5th Cir. 1996) (no statements of existing fact of when lender said that he "expected a letter of commitment to be issued within the next two to five days," "that from [the lender's] point of view everything looked good," and that the loan was a "done deal").

Here, Sigma sufficiently alleges that Defendants made statements of existing fact; including that: Defendants "had discussed the Plaintiff's project with numerous lenders," Am. Compl, ¶ 51(1); Epshteyn "had already called upon his connections within the investment banking industry," *id*. ¶ 51(14); Mission Capital and Madison Capital were ready and willing to fund the project, *id.* ¶ 51(39); and

"Defendants had arranged for funding through lenders," *id.* ¶ 51(2), ECF No. 11.[7]

These statements are sufficient to state a claim for negligent misrepresentation.

*See, e.g., Compean v. Bank of Am.,* No. 12-cv-189, 2013 WL 12140278, at *8

(S.D. Tex. Mar. 11, 2013) (Morgan, J.), *R&R adopted*, 2013 WL 12140279 (S.D.

Tex. Apr. 15, 2013) (Hanen, J.) (misrepresentation of existing fact was a failure to

disclose that mortgage default would be classified as delinquencies and could lead

to foreclosure); *Stapp v. Bank of Am., N.A.*, No. 4:11-cv-203, 2013 WL 1313160,

at *6 (E.D. Tex. Feb. 28, 2013), *R&R adopted*, 2013 WL 1309735 (E.D. Tex. Mar.

28, 2013) (finding that misrepresentation about money owed on a mortgage was a

statement of existing fact).

  b.   *Sigma alleges that Defendants made misrepresentations to Sigma*

Defendants next argue that the alleged misrepresentations were not made to

Sigma, but to another entity, Sitywalk, that Chaudhary represented and on whose

behalf he entered into a contract when Defendants made these statements. Second

Mot. Dismiss, ¶¶ 60-61, ECF No. 16.

Apparently, Chaudhary represented Sitywalk in a contract negotiation with

Defendants for the same service—to find investors for a theme park development

---

[7] Some of Sigma's allegations that do not constitute a statement of an existing fact include: "the strong prospect that the project would be funded," Am. Compl., ¶ 51(4); "when the timing was right, Mr. James Tammaro . . . would step in," *id.* ¶ 51(9); "funding of the project was a done deal," *id.* ¶ 51(10); "he knew just the investors which would fund the Plaintiff's project," *id.* ¶ 51(12); and Defendants "went to great lengths to assure the Plaintiff they would get the Plaintiff's project funded," *id.* ¶ 51(13), ECF No. 11.

project—before he represented Sigma. This is not alleged in the complaint. Likewise, Sigma does not allege that the misrepresentations were made to Sitywalk. To the contrary, Sigma alleges that in November and December 2014, Chaudhary, on Sigma's behalf, from Sigma's bank account tendered $100,000 to Defendants to find investors. Am. Compl., ¶ 13, ECF No. 11. Throughout the complaint, Sigma alleges that it paid Defendants. The December 19, 2014, email exchange between Chaudhary and Epshteyn establishes that Chaudhary was representing Sigma in December 2014, which is when it alleges Defendants made misrepresentations regarding Mission Capital and Madison Capital. Am. Compl., ¶ 29, ECF No. 11. The email also establishes that Sigma did not agree to the draft Defendants had sent. *See* Second Mot. Dismiss, App. pp. 36-41, ECF No. 16-1. Finally, Epshteyn represented in the email that the Sitywalk contract was cancelled and all claims were released. *Id.* p. 39. Construing the facts in favor of Sigma, the allegations and email are sufficient to show that the alleged misrepresentations were made to Sigma.

### 2.      Justifiable reliance is a question of fact for the jury

Defendants assert that it was unreasonable for Sigma to rely on any verbal misrepresentations when Defendants refused to include them in the written contract. Second Mot. Dismiss, ¶¶ 62, 69, ECF No. 16. Defendants make this argument for the claims for fraudulent misrepresentation, violation of the DTPA,

common law fraud, and fraudulent inducement.[8] *Id.* ¶ 63. These claims all require that the plaintiff show that its reliance on the statements was justified. *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 811 (5th Cir. 2017).

Whether a plaintiff's reliance was justified, however, is a question of fact for the fact-finder to determine. *Id.*; *McKinney/Pearl Rest. Partners, LP v. Metro. Life Ins. Co.*, No. 3:14-CV-2498, 2017 WL 998533, at *20 (N.D. Tex. Mar. 15, 2017). Courts reserve this question for the fact-finder because it must evaluate the "plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud . . . ." *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 830 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)) (internal citations omitted).

Thus, courts have found that "justifiable reliance depends heavily on the relationship between the parties and their relative sophistication . . . ." *Koesler v. Beneficial Fin. I, Inc.*, No. 16-cv-138, 2016 WL 8138817, at *12 (W.D. Tex. Oct. 12, 2016). Nothing in the amended complaint suggests that Sigma had any special sophistication or access to outside expert advice. *See id.*; *Cobb v. Miller*, No. H-12-cv-1943, 2013 WL 12142342, at *7 (S.D. Tex. Aug. 7, 2013) (Milloy, J.), *R&R adopted*, 2013 WL 12142344 (S.D. Tex. Aug. 27, 2013) (Gilmore, J.) (denying

---

[8] Sigma has failed to plead that it entered into a binding agreement, a necessary element of a fraudulent inducement claim, *infra* § C(8).

motion to dismiss based on absence of these factors); *Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp. 2d 623, 638 (S.D. Tex. 2007) (Smith, J.). Thus, Defendants' motion to dismiss should be denied.

### 3.    Sigma has complied with Rule 9(b)

Defendants argue that Sigma has failed to comply with Rule 9(b)'s pleading-with-particularity requirement. Second Mot. Dismiss, ¶¶ 63-71, ECF No. 16.

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[9] What constitutes sufficient "particularity" will differ depending on the facts of each case. *Bryant v. CIT Grp./Consumer Fin.*, No. H-16-CV-1840, 2017 WL 2118950, at *3 (S.D. Tex. May 16, 2017) (Miller, J.) (citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009)). Courts read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s mandate of "simple, concise, and direct allegations." *Peacock*, 181 F. Supp. 3d at 435 (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)); *accord Kanneganti*, 565 F.3d at 186 (Federal Rule of Civil Procedure 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud").

---

[9] A failure to plead with particularity and comply with Rule 9(b) is appropriately addressed on a 12(b)(6) motion to dismiss. *Fitzpatrick v. Uni-Pixel, Inc.*, 35 F. Supp. 3d 813, 820 (S.D. Tex. 2014) (Lake, J.) ("A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." (quoting *Southland Secs. Corp.*, 365 F.3d at 361)).

At a minimum, the Fifth Circuit requires the plaintiff to plead the "time, place, and contents of the false representations as well as the identity of the person making the misrepresentations and what that person obtained thereby." *Wallace v. Tesoro Corp.*, 796 F.3d 468, 480 (5th Cir. 2015); *accord Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 881 (W.D. Tex. 2014) ("the who, what, when, and where must be laid out before access to the discovery process is granted"); *Pagan-Negron v. Wells Fargo, N.A.*, No. 11-cv-398, 2011 WL 10604778, at *6 (W.D. Tex. Sept. 6, 2011) (allegations of the misrepresentation, the approximate time frame, where, and how, found sufficient).

Rule 9(b) applies in all cases "where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 557 (S.D. Tex. 2012) (Ellison, J.). Thus, Sigma must comply with Rule 9(b) in stating its claims for fraudulent misrepresentation, violations of the DTPA, fraudulent inducement, negligent misrepresentation, and common law fraud. *See Partain*, 838 F. Supp. 2d at 557, 563 (fraudulent misrepresentation and violation of the DTPA); *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 664 (S.D. Tex. 2016) (Harmon, J.) (common law fraud); *Peacock*, 181 F. Supp. 3d at 435 (violations of the DTPA, negligent misrepresentation, and fraudulent inducement).

The Court finds that Sigma has complied with Rule 9(b)'s pleading requirement. Sigma has identified the two speakers, Epshteyn and Tammaro, who made the statements over the telephone and in emails to Sigma in November and December 2014. *E.g.,* Am. Compl., ¶¶ 14, 21-24, 29, 38, ECF No. 11. For example, Sigma alleges that, in December, Epshteyn and Tammaro told it that they had spoken to specific investors and had already arranged for funding with two of these investors. *Id.* ¶¶ 51(1)-(2), (14), (23). Sigma alleges that these statements were false and were used to induce Sigma into making the December payment. *Id.* ¶ 51(20).

The amended "complaint sets forth the misrepresentations [Sigma] alleges were made with sufficient specificity to put [Defendants] on notice as to what conduct [Sigma] was complaining about and what type of relief [it was] seeking." *See Carroll v. Farooqi*, 486 B.R. 718, 724 (N.D. Tex. 2013); *Pagan-Negron*, 2011 WL 10604778, at *6 (denying motion to dismiss when the plaintiff alleges the approximate time frame of the statements, where they were spoken, and how they were fraudulent).

### 4.   Sigma has sufficiently pled its unjust enrichment claim because it alleges that Defendants gained a benefit through fraud

Defendants assert that this claim fails because of the existence of a binding contract and lack of any injury to Sigma. Second Mot. Dismiss, ¶¶ 84-86, ECF No. 16.

19

"Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 462 (5th Cir. 2017) (quoting *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). "'A party may recover under unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage.'" *Id.* (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

Sigma sufficiently alleges a claim for unjust enrichment because it asserts that TGP obtained a benefit through fraud. *See Benhamou*, 190 F. Supp. 3d at 665-66 (denying motion to dismiss when the plaintiff alleged that the defendant unjustly received a benefit through fraud); *Janvey v. Suarez*, 978 F. Supp. 2d 685, 699-700 (N.D. Tex. 2013) (denying motion to dismiss when the plaintiff alleged the defendant obtained a benefit from a scheme that defrauded the plaintiff). Sigma alleges that Defendants induced it to pay $100,000 based on statement that Defendants had spoken to certain investors and had already arranged for funding. *See, e.g., Pazarin v. Armes*, 512 F. Supp. 2d 861, 878 (W.D. Tex. 2007) (denied summary judgment for unjust enrichment claim where the defendants received benefit of $100,000 paid without providing professional services that merited the payment).

20

Defendants argue that the unjust enrichment claim fails because this dispute is covered by the Sitywalk contract. Second Mot. Dismiss, ¶¶ 84-86, ECF No. 16; Reply Second Mot. Dismiss, ¶¶ 46-53, ECF No. 22. A claim for "unjust enrichment is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Eun Bok Lee*, 411 S.W. 3d at 112. However, accepting the well-pleaded facts as true, Sigma alleges that it never entered into a contract with TGP. The only reference to the Sitywalk contract in the complaint was that the "second payment of $50,000 was made after the Sitywalk contract had been mutually voided by the parties." Am. Compl., ¶ 46(4), ECF No. 11. The email chain Defendants submitted in support of their motion to dismiss shows that the Sitywalk contract was cancelled. Second Mot. Dismiss, App. p. 39, ECF No. 16-1.

Here, the Parties dispute whether the Sitywalk contract covers this claim. "'When the existence of or the terms of a contract are in doubt, and there is a claim for unjust enrichment, it is incumbent on the party disputing that claim to secure findings from the trial court that an express contract exists that covers the subject matter of the dispute.'" *Pazarin*, 512 F. Supp. 2d at 877 (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000)). Thus, the existence of the contract is an affirmative defense. *Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, LP*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013, no pet.). A claim may be dismissed on a Rule 12(b)(6) motion based on an affirmative defense only

21

if it "appears clearly on the face of the pleadings." *Van Duzer v. U.S. Bank Nat.
Ass'n*, 995 F. Supp. 2d 673, 686 (S.D. Tex.) (Lake, J.), *aff'd*, 582 F. App'x 279
(5th Cir. 2014) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967,
970 (5th Cir. 1986)). The complaint and December email chain do not support
Defendants' claim that the Sitywalk contract covers this dispute. Therefore,
Defendants have not met their burden. The motion to dismiss should be denied.

### 5. The violation of the Texas Securities Act claim fails because this transaction did not involve a security

Sigma alleges that Epshteyn and Tammaro violated the Texas Securities Act
("TSA") because they attempted to sell securities without being registered as
agents with the Texas State Securities Board and are liable under Tex. Rev. Civ.
Stat. Ann. art. 581-33(A)(1). Am. Compl, ¶¶ 113-17, ECF No. 11.

To be liable under this provision of the TSA, a person must "offer[] or sell[]
a security" without being registered with the Texas State Securities Board. Tex.
Rev. Civ. Stat. Ann. arts. 581-12, 841-33(A)(1). A security is a type of financial
instrument that holds some monetary value that can be sold and traded. *See id.* art.
581-4(A).[10] Services are not defined as a security under the TSA. *See id.*

---

[10] The TSA defines "security" as

> any limited partner interest in a limited partnership, share, stock, treasury stock,
> stock certificate under a voting trust agreement, collateral trust certificate,
> equipment trust certificate, preorganization certificate or receipt, subscription or
> reorganization certificate, note, bond, debenture, mortgage certificate or other
> evidence of indebtedness, any form of commercial paper, certificate in or under a

Because Sigma alleges that it hired Defendants to find investors, i.e., to provide investment banking *services*, Epshteyn and Tammaro were not required to register as agents with the Texas State Securities Board. *See id.* art. 581-4(A); Am. Compl., ¶ 13, ECF No. 11 (Defendants were hired "for the purpose of said Defendants to search and find investors for a real estate project."). Sigma did not sell or buy a security from Defendants. This claim fails. *See e.g., Gallier v. Woodbury Fin. Servs., Inc.*, No. H-14-cv-888, 2015 WL 1296351, at *11 (S.D. Tex. Mar. 23, 2015) (Rosenthal, J.) (dismissing TSA claims because plaintiffs failed to allege the transactions involved securities as defined under the TSA).

### 6. The conversion claim fails because the money Sigma paid for services cannot be the subject of a conversion claim

The elements of conversion under Texas common law are

> (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

*E.g., Stroud Prod., LLC v. Hosford*, 405 S.W.3d 794, 811 (Tex. App.—Houston [1st Dist.] 2013, pet denied).

---

profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security.

Tex. Rev. Civ. Stat. Ann. art. 581-4(A).

Typically, money cannot be *the property* subject to a conversion action. *Felchak v. JP Morgan Chase Bank, N.A.*, No. H-12-cv-2847, 2013 WL 1966972, at *4 (S.D. Tex. May 10, 2013) (Miller, J.). There are only two instances where money can be the subject of a conversion action. *Fowler v. U.S. Bank, Nat. Ass'n*, 2 F. Supp. 3d 965, 982 (S.D. Tex. 2014) (Lake, J.) (citing *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996)). The first instance is when the money is in the form of a specific chattel, and readily identifiable, such as an old coin. *Id.* (citing *Mitchell Energy Corp*, 80 F.3d at 984). The second instance is when "'the money is delivered to another party for safekeeping, the keeper claims no title, and the money is required and intended to be segregated, either substantially in the form in which it was received or as an intact fund.'" *Id.* (quoting *Mitchell Energy Corp*, 80 F.3d at 984); *Stewart v. JP Morgan Case Bank, Nat. Ass'n*, No. 3:12-CV-1361, 2012 WL 3703373, at *3 (N.D. Tex. July 17, 2012), *R&R adopted*, 2012 WL 3715212 (N.D. Tex. Aug. 28, 2012) ("When an indebtedness can be discharged by the payment of money generally, an action in conversion is inappropriate."). Neither instance applies here.

Sigma alleges it paid Defendants for services rendered—to secure investors. Am. Compl, ¶ 27, ECF No. 11 ("Plaintiff [] tendered to the Defendants Epshteyn and Tammaro the total sum of $100,000.00 as payment for the services that Defendants promised to provide."). However, a general indebtedness for services

24

rendered or money owed cannot be the subject of a conversion action. *See Mitchell Energy Corp.*, 80 F.3d at 984; *accord Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 797 (S.D. Tex. 2013) (Ellison, J.) (dismissing conversion claim because it was a dispute about whether services were rendered).

Sigma argues that TGP has no claim of title because it had not done any work on the project and the money was required to be segregated and separated for safekeeping pursuant to "NASD and FINRA rules." Am. Compl., ¶¶ 46(12)-(14), ECF No. 11; Resp. Second Mot. Dismiss, p. 11, ECF No. 20. Sigma fails to cite any NASD or FINRA rules or regulation that would require safekeeping of the money Sigma paid to Defendants. Even if a rule did apply, "there is no private cause of action allowing a customer to sue a FINRA member on the basis that they violated the FINRA rules." *Gallier*, 2015 WL 1296351, at *6.

Thus, the conversion claim should be dismissed.

### 7.   The breach of fiduciary duty claim fails because there was no fiduciary relationship

The elements of a breach of a fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) a breach of the duty by the defendant; and (3) injury to the plaintiff or benefit to the defendant because of the defendant's breach. *Guevara v. Lackner*, 447 S.W.3d 566, 579 (Tex. App.—Corpus Christi 2014, no pet. ) (citing *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999)).

When there is no evidence of a fiduciary relationship, the issue can be determined as a matter of law. *Id.* A fiduciary relationship can be created either informally as a result of the confidential relationship between the parties or formally as a matter of law. *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 364 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005)).

Sigma does not allege that an informal fiduciary relationship existed. Nor can it because this relationship involved one arm's-length transaction. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997); *Siddiqui*, 504 S.W.3d at 365. Instead, Sigma asserts that that "under the rules and regulations of FINRA, Defendants owed fiduciary duties to Plaintiff and violated those duties." Resp. Second Mot. Dismiss, p. 11, ECF No. 20. Sigma again fails to cite a FINRA rule or regulation. Nonetheless, there is no private cause of action against a FINRA member for violating FINRA rules. *Supra* § III(C)(6). Moreover, FINRA does not apply because the Parties were not dealing in securities. *See* 15 U.S.C. § 77b(a)(1) (defining security); FINRA Manual Rule 0160(3), 2009 WL 2708397, at *1 (2016) (coverage of FINRA rules); *see supra* § III(C)(5).

Accordingly, Sigma's breach of a fiduciary duty claim fails.

**8.      The fraudulent inducement claim fails because Sigma does not allege that it entered into a binding agreement**

Fraudulent inducement is a category of common-law fraud that shares the same elements of a fraud claim. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 152 (Tex. 2015) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). It requires the additional element that the plaintiff was induced into forming a binding agreement. *Id.*

Sigma does not claim that it entered into a valid and binding agreement; quite the contrary, it alleges the contract was never executed. Am. Compl, ¶ 28 ("Plaintiff did not sign or execute the written agreement"); ¶ 46(5) ("This second payment was credited towards the new contract, which was still being negotiated by the parties."); ¶ 67 ("and it only needed Plaintiff's decision to pay the upfront fee and enter into a contractual relationship"), ECF No. 11.[11] Because Sigma is not alleging that it entered into a binding agreement, the fraudulent inducement claim fails. *See Bohnsack v. Varco, LP*, 668 F.3d 262, 277-78 (5th Cir. 2012) ("a plaintiff must show that his reliance on the defendant's misrepresentations induced him to enter into a contract, not just contractual negotiations").

**9.      Sigma withdrew its disgorgement cause of action**

Disgorgement is not a cause of action, but "an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs." *Montwood Prop.,*

---

[11] Sigma acknowledged at the December hearing that it is not alleging that it formed a binding agreement with Defendants.

*Ltd. v. Residential Funding Corp.*, No. 14-CV-325, 2016 WL 7636134, at *4 (W.D. Tex. Mar. 31, 2016) (quoting *Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 413 (5th Cir. 2007)).

At the December 15 hearing, Sigma withdrew this claim. Sigma's counsel stated that it only seeks disgorgement as a remedy from its unjust enrichment claim.

### IV. CONCLUSION

The Court recommends that Defendants' motion to dismiss for lack of personal jurisdiction be **DENIED**. The Court further recommends that Defendants' motion to dismiss be **DENIED** as to the claims for negligent misrepresentation, fraudulent misrepresentation, violation of the DTPA, common law fraud, and unjust enrichment. The Court further recommends that Defendants' motion to dismiss be **GRANTED** as to the claims for conversion, breach of fiduciary duty, violation of the TSA, and fraudulent inducement. Sigma withdrew its disgorgement claim.

The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on July 28, 2017, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**